# ORLEANS COUNTY.

---

## James Wilson *v.* Isaac Seavey.

### *Taxes. Evidence. Statute. Trespasser ab initio. Pleading.*

Where an officer justifies for an alleged trespass under a rate-bill and warrant issued on a tax voted on a grand list of a year which is not a year of general appraisal of real estate, it is sufficient proof of the allegation in the plea to produce the grand list of the year the tax was voted, without producing the grand list of the last year of general appraisal.

The omission of the name of the constable or collector in the direction does not render a warrant for the collection of taxes void.

Nor would the insertion of the name of a person deceased vitiate the warrant.

A constable may execute a warrant on a rate-bill, though issued before he was appointed. It is sufficient that he is such at the time he executes it.

A. was the collector of taxes up to November 30th, 1862, when he died. The defendant was elected collector to fill the vacancy January 8th, 1863. The rate-bill and State Treasurer's warrant for the state tax was dated January 1st, 1863, and directed to A., the Treasurer not knowing of his decease, and the same was put into the hands of the defendant January 28th, 1863, for collection. *Held*, that the case comes within the scope of the statute, (ch. 81, p. 470, C. S.,) providing in case of the decease of the collector, for the collection of taxes by his successor, by virtue of the same warrant issued to the former collector, and without any new direction in the warrant.

If a defendant succeed upon an issue of fact joined on one of several pleas going to the whole action, he is entitled to a verdict and judgment irrespective of the result of any other issue joined on any other line of pleading.

The selectmen should annex a warrant to a rate-bill of a state school tax as in case of a tax voted by a town.

When an officer acts and justifies under several processes, some of which are valid and some invalid, he is liable if it appears that, to the injury of the plaintiff, he has done more than he was justified in doing by the valid processes; otherwise he is not liable.

If an officer under two rate-bills, one valid and the other invalid, siezes no more property than he is authorized to by virtue of the valid process, and sells the same for more than enough to satisfy the valid process and then appropriates the excess to satisfy the invalid process, such misapplication does not render the officer a trespasser *ab initio*. But he would be liable for the excess so applied; whether beyond that, not decided.

To make an officer serving process a trespasser *ab initio* the wrongful act must be done to the property taken,—not to the fund realized from a legal sale.

Wilson *v.* Seavey.

TRESPASS for two oxen. The defendant plead the general issue, and two special pleas. The defendant in his first special plea justified the taking under three rate-bills, one a town tax, another a state tax, and the third a state school tax, the two first with warrants annexed, and the last without a warrant; and in his second plea he justified under the said two rate-bills with warrants annexed. The plaintiff replied to the special pleas—issue was joined on this replication. Trial by jury, June Term, 1864, POLAND, Ch. J., presiding.

The defendent admitted the taking. The defendant gave in evidence the grand list of Brownington for the year 1862, from which it appeared that the plaintiff had a list for that year of $27.31—real estate, $16.42—personal, $8.89. The defendant also gave in evidence three tax-bills—one for a town tax in said Brownington, voted at the March meeting, 1862, in which the plaintiff was assessed $13.66 ; the bill for the state tax in 1862, in which the plaintiff was assessed $21.85, and the state school tax for 1862, in which the plaintiff was assessed $2.46. No question was made but that these taxes were duly voted and assessed. A regular warrant was attached to the town tax, dated May 30th, 1862, and signed by T. C. Stewart, justice of the peace. The defendant also gave in evidence a warrant from the state treasurer for the collection of the state tax, dated January 1st, 1863, directed to A. H. Gross, constable and collector of the town of Brownington. It was conceded that, prior to the 1st January, 1863, A. H. Gross died, and that the defendant was duly elected collector to fill the vacancy created by his death, on the 8th day of January, 1863. On the 28th day of January, 1863, the selectmen of Brownington delivered the said town tax-bill and warrant thereon, which had previously been in the hands of the former collector, Gross, to the defendant to collect the taxes remaining uncollected thereon ; and also on the same day delivered to the defendant for collection the state tax and school tax aforesaid, and the state treasurer's warrant above mentioned.

No warrant was ever attached to the school tax, and the defendant had no warrant for its collection.

After receiving said tax-bills, the defendant called on the plaintiff to pay his taxes thereon, which he refused to do, whereupon the de-

fendant seized the plaintiff's oxen, and advertised and sold them as stated in his pleas; and from the avails of the sale satisfied all of said taxes. It was admitted by the defendant that he took the property for the purpose of satisfying all said taxes, and that all his proceedings and sale were for the same purpose.

The plaintiff's counsel insisted that, inasmuch as the year 1862 was not a year when real estate was appraised, it was incumbent on the defendant to produce the grand list of the year when real estate was last appraised, so as to show that the real estate of the plaintiff was duly appraised and set in the list. The plaintiff also claimed that the defendant's justification was bad because the defendant had no warrant for the collection of the school tax; and the taking and sale was equally upon that tax, and for the purpose of satisfying that, and the same was satisfied out of the sale. And also that the defendant could not justify under the state treasurer's warrant, because the same was not directed to him, but to A. H. Gross. No other questions were raised on the trial.

The court decided that the defendant's justification under his special pleas was not made out, and directed a verdict for the plaintiff, —to which the defendant excepted.

*Edwards & Dickerman* and *Timothy P. Redfield*, for the defendant.

I. The state school tax being a fixed sum, imposed by statute, and the duty of the selectmen to assess being a mere clerical duty, no warrant is required. The list being settled, the amount of tax that each person shall pay is *declared by law*. No warrant by a magistrate can add sanctity or force to the *statute law*.

II. The warrant for the collection of the *state* and *town* tax being regular, they afford a full justification for the *taking* of the property sued for, even though the defendant had not the right to appropriate any of the avails of the sale to satisfy the *state school tax*. It is like taking and selling property on two executions, one of which proved to be irregular,—all the proceedings are proper except that a *portion* of the money is applied on an execution when it should have been paid to the debtor. For in this case, if the defendant had paid over the money (which he applied to pay the school tax) to the plaintiff, every act would be just what his official duty enjoined. And if the *taking* be legal, no subsequent omission or misapplication can make

the taking tortuous by *relation.* See *Stone* v. *Knapp,* 29 Vt. 501 ; *Briggs* v. *Gleason, ib.* 78 ; *Eaton* v. *Cooper et al., ib.* 444 ; 1 Smith L. C. 219 ; *Hays* v. *Drake,* 6 Gray, 387 ; *Stoughton* v. *Mott,* 25 Vt. 668.

III. It is wholly unnecessary to name the constable in the direction in a warrant ; and this would seem to be so from analogy to the direction of writs, executions, and other warrants wherein the name is always omitted. But if it were so, the statute has been complied with. The 37th section, ch. 15, Compiled Statutes, requires the town clerk to transmit to the state treasurer, by the 20th day of October, annually, a *certificate* of the name of the first constable of his town. The name of A. H. Gross, as first constable, having been duly transmitted to the state treasurer, it was his duty to forward his warrant in pursuance of the *certificate* of the town clerk. This warrant having been directed to Gross, the only person of record in the treasurer's office, on Gross' death it became his administrator's duty to lodge with the town clerk such warrant. (C. S., ch. 81, § 49.) And when another collector is chosen it becomes the duty of the town clerk to deliver him such warrant, and such collector is to proceed thereon in the collection of said taxes. This warrant being thus in the collector's hands, it was the duty of the selectmen to make out the tax-bill and place it in the hands of said constable for collection as was done. *Lewis* v. *Avery et al.,* 8 Vt. 287 ; *Chandler* v. *Spear,* 22 Vt. 388 ; *Hays* v. *Drake,* 6 Gray, 387.

*Benj. H. Steele,* for the plantiff.

The defendant admits that all his proceedings, from first to last, were to satisfy the sum of $37.97 and costs, composed as he says of $21.85 state tax, $2.46 school tax, and $13.66 town tax. 1. We insist that no valid warrant issued for the collection of the state tax. The warrant to Gross issued when there was no such man and no such office. The man is dead and the office is vacant. 2. The subsequent election of the defendant to the office entitled him to the unfinished business that came into his predecessor's hands before his death. The statute limits him to that. It gives him no right by virtue of papers that his widow and heirs received. The warrant had no life previous to the defendant's receiving it. It could not therefore be revived by him. (G. S., p. 536, § 53, *et seq.*) 3. No warrant issued

to any one, dead or alive, for the collection of the school tax. And the defendants evidence negates his plea, which assumes that the property was not taken upon this tax. G. S., p. 529, § 6; *Brown* v. *Wright*, 17 Vt. 97. 4. All the taxes were raised upon real estate, and the defendant did not show the same to have been properly appraised and set in the list. *Collamer* v. *Drury*, 16 Vt. 574; *Downing* v. *Roberts*, 21 Vt. 441. 5. The defendant substantially concedes that every proceeding he took was bad in part,—a trespass, —and with the intention of compelling the payment of money which he had no authority to collect. It was therefore a trespass throughout and at every step,—not *ab initio* merely, technically and by relation, but in its literal sense. Taxes are not judgments on contracts, and cannot be offset. If a proceeding is bad in part, it is bad in all. *Pierce* v. *Boston*, 3 Met. 520; *Appleton* v. *Hopkins*, 5 Gray, 530; *Henry* v. *Chester*, 15 Vt., 466; *Drew* v. *Davis*, 10 Vt. 506; *Stetson* v. *Kempton*, 13 Mass. 283; *Libby* v. *Burnham*, 15 Mass. 144; *Shaw* v. *Peckett*, 26 Vt. 482.

The opinion of the court was delivered by

PECK, J.   The action is trespass for two oxen. The defendant in his second special plea justifies under two rate-bills and warrants against the plaintiff; one a town tax voted and assessed on the grand list of 1862, the other a state tax for the same year assessed upon the same grand list. The plaintiff in his replication traverses the existence of such list of the plaintiff as is alleged in the defendant's plea, and also traverses the rate-bills and warrants, upon which issue to the jury is joined.

1. To prove that the plaintiff had such grand list the defendant introduced the grand list of the town for 1862, in which it appeared that the plaintiff's list was as alleged in the plea. No question was made by the plaintiff at the trial but that the grand list was regular and valid upon the face of it, and no question was raised in relation to it except the plaintiff claimed that as the year 1862 was not a year for the general appraisal of real estate, it was incumbent on the defendant to produce the grand list of the year of the last general appraisal of real estate, so as to show that the real estate of the plaintiff was duly appraised and set in the list. This the defendant was not bound to do. The law requires a grand list

to be made each  year, and  the  grand list of 1862  was  the  list  on
which the taxes in question were to be assessed.   It being  made  by
sworn officers appointed for that  purpose, and  being  regular on the
face of it,  it  is  to  be  presumed  to  be  correct until  the contrary is
shown.   The list of the last preceding year of appraisal, had it been
produced, would not necessarily have  shown whether  the  plaintiff's
list of 1862 was correctly made  up or not ; since  changes often take
place in relation to real estate intervening  between  the  years of ap-
praisal,  which  make  it  the  duty  of  listers  to  make  corresponding
changes in the list ; as where there has been a transfer of real estate,
it must be set to the new owner ; and when  a  portion  of  a  parcel  of
land has been conveyed, the  former appraisal  is  to  be  justly  appor-
tioned in making up the list, between  the  grantee  of  such  portion
and the former proprietor.   So when at  the  regular  appraisal  any
real estate  is  by accident, mistake or otherwise, omitted, it is made
the duty of listers for any succeeding  year,  to  appraise  and  set the
same in the list to the owner.   The grand list of  1862  was sufficient
proof of this allegation in the plea.

  2.   In proof of the other allegation traversed, the defendant intro-
duced the two rate-bills and warrants set forth in the plea.   No ob-
jection was made in the county court, and none is made here,  to  the
rate-bill and warrant for the town tax.   No objection  is  made to the
rate-bill for the state tax.   But in  relation  to  the  state  treasurer's
warrant for the collection of that tax, it  appears from allegations in
the plea not traversed, and from the exceptions  taken  together, that
A. H. Gross was the collector for 1862,  up  to November 30th, 1862,
when he died, and that the defendant was elected  collector to fill the
vacancy January 8th, 1863 ; that on the 28th January, 1863, the se-
lectmen delivered  to  the  defendant for  collection the rate-bill  and
warrant for the  collection of the  town tax, which  had  previously
been in the hands of Gross for collection, and at  the  same  time  de-
livered to the defendant for collection the rate-bill  and  state  treasu-
rer's warrant for the  state tax.   The treasurer's  warrant  is  dated
January 1st, 1863.   The plaintiff insisted in  the county court that
the defendant could not justify under the  state  treasurer's  warrant
because the same was not directed to him, but to A. H. Gross.   The
direction in the warrant is, "*To A. H. Gross, constable and  collector*

of the town of Brownington." The only question raised in the county court was whether the name of A. H. Gross being in the direction of the warrant instead of the name of the defendant, rendered it void in the hands of the defendant as an authority to him to collect the tax. Is it necessary to the validity of a warrant for the collection of taxes, that it should be directed to the collector by name; or is a direction to the first constable or collector of the town sufficient? The statute provides that "when the general assembly shall impose a state tax, the treasurer of the state shall immediately issue his warrant to the first constable of each town, subject to the payment of such tax, commanding him," &c. The statute does not in terms require the name to be inserted. The form given in the statute indicates the insertion of the name, but on the other hand, if the statute is to be interpreted from analogy to the provisions relating to the direction of writs, executions and other processes, it would seem that a general direction by designation of the office of first constable or collector is sufficient. No very strong inference can be drawn from sec. 37, ch. 15, Comp. St., requiring town clerks to transmit to the state treasurer the names of first constables, that it is for the purpose of enabling the treasurer to insert the name in the warrant, since such information is necessary to enable the treasurer to transmit papers to such constables, and to issue extents against delinquent constables. The general power of a first constable to collect taxes, is, under the statute, incident to the office, and a different principle applies from that which would be applicable if the whole authority was derived by special appointment from the treasurer. We think in the absence of any more explicit requirement of the statute, we are not warranted in holding, contrary to the general principle applicable to other process, that the omission of the name in the direction renders a warrant for the collection of taxes void. But it is said if the warrant would be good with no name inserted, it is rendered bad in the defendant's hands by the insertion of the name of Gross. But if no name need be inserted, the insertion of the name of a person deceased we think cannot vitiate it. But other objections not made in the county court have been urged and discussed, which perhaps ought to be disposed of in reference to a future trial. It is insisted that the warrant is void for the reason that

when issued the defendant was not collector, and the office was vacant. If this is so the same rule must apply to writs and other process. Formerly in this state writs were directed to the sheriff of the county or constable of the town, naming the county and town. I think it was never held that a constable could not serve such writ if it issued prior to his appointment, or when the office was vacant. It is sufficient that the officer is such at the time he executes the writ. *Hayes* v. *Drake*, 6 Gray, 387, cited in argument, is a direct decision against the plaintiff on this point.

But in the opinion of the court this rate-bill and warant, in connection with the facts in the case, come within the scope of the statute, ch. 81, p. 470, Comp. St., providing in case of the decease of a collector, for the collection of taxes by his successor, by virtue of the same warrant issued to the former collector, and without any new direction in the warrant. It is true that if the statute is taken literally it would be confined to rate-bills and warrants that had been committed to such former collector. We think by a reasonable and proper construction of the statute in view of the object intended to be accomplished, it should embrace a case like this, where the treasurer obviously acted, in issuing the warrant, on the faith of the information furnished him by the town clerk, without knowing of the decease of the former collector, although the collector deceased before the warrant reached him and before it issued. If we adopt any more limited construction and adhere to the letter of the statute, every case must be excluded unless the *"tax-bill"* actually came to the hands of the former collector in his life-time, even if he had received the treasurer's warrant. This would be too narrow a construction.

This warrant being good in the hands of the defendant, the issue joined on the replication to the second special plea was proved by the defendant, and the court ought to have directed a verdict for him. If a defendant succeeds upon an issue of fact joined on one of several pleas going to the whole action, he is entitled to a verdict and judgment, irrespective of the result of any other issue joined on any other line of pleading. One defence is sufficient for one cause of action. It is insisted that as it appeared that the defendant seized and sold the property on a state school tax, as well as on the

two rate-bills and warrants mentioned in the second special plea, for the purpose of satisfying the three taxes, and as the state school tax had no warrant annexed to it, and as the defendant from the avails of the sale satisfied all the taxes, the defendant was a trespasser *ab initio,* and the justification fails. The plaintiff cannot avail himself of these facts in answer to the second special plea without presenting them in his replication. They are outside of the issue. Whether he could do so under the first special plea, which justifies under the three rate-bills, it is not necessary to decide. But the question having been fully argued as to the effect of these facts if properly presented, it is not improper that the court should express an opinion upon it, as it may arise on a future trial.

The plaintiff claims that the officer had no authority to proceed to take property by virtue of the state school tax for want of a warrant. The defendant insists that no warrant is required for the collection of such tax. The statute provides that when any town *"shall impose"* a tax, the selectmen shall make out a tax-bill and cause a warrant of a justice of the peace to be annexed. It can hardly be said that the state school tax is in strictness *imposed* by the town. It is not voted by the town, but is assessed by the officers of the town. The same may be said of the highway tax; but as to that, the statute expressly requires the selectmen to assess the tax and annex a warrant. There is no law requiring the state treasurer to issue his warrant for the collection of the state school tax, and none in express terms requiring such duty of the selectmen, unless such tax can be said to be *imposed* by the town. It is, however, provided by sec. 68, p. 153, Comp. St., that "the selectmen of each town shall annually, previous to the first day of January, assess a tax of nine cents on the dollar of the list of such town, to be collected and paid over to the treasurer of the town previous to the first day of March succeeding, *in the same manner that other town taxes are collected,"* &c. Taking these provisions together, in our opinion the fair intendment is that the selectmen shall annex a warrant as in case of a tax voted by the town. It is not reasonable to suppose the legislature intended to dispense with a warrant in the single case of the state school tax, and require it in all other cases. It is difficult to see how the state school tax can be collected *in the same manner* as other

taxes, without a warrant, especially as the collector is expressly required, in case of commitment for taxes, to leave a copy of his warrant with the jailor. The defendant, therefore, cannot justify under that rate-bill.

The question then is, what is the effect of this upon the defendant's justification? When an officer acts and justifies under several processes, some of which are valid and some invalid, he is liable if it appears that, to the injury of the plaintiff, he has done more than he was justified in doing by the valid processes; otherwise he is not liable. This proposition rests on reason, justice, principle and authority. This is the result of the authorities cited. Without resorting to the allegations in the defendant's pleas, there is nothing in the exceptions showing that the defendant seized or sold more property than he was justified in taking and selling under the town and state taxes. These two taxes amount to $35.51. The state school tax is $2.46. The defendant's pleas allege that the oxen sold for $77., and that the taxes and costs amount to $46.33. If the defendant was justified in taking the whole property by virtue of the valid processes, and proceeded under the three processes and sold more than he was justified in selling to satisfy the two valid processes and costs thereon, he is liable for such excess; whether liable beyond that, it is not necessary now to decide. Treating the facts as all before the court by appropriate pleadings, there is nothing in the case showing any such excess as would warrant the court in directing a verdict for the plaintiff on that ground.

But it is insisted on the part of the plaintiff that the fact of the application of a portion of the money realized by the sale to satisfy the state school tax, makes the defendant a trespasser *ab initio*, and defeats the justification. But such is not the legal effect. In order to make the defendant a trespasser *ab initio*, the proceedings being regular down to and including the sale, the wrongful act relied on for that purpose must be an act relating to the property in question. The misapplication of a portion of the money arising from the sale will not make the defendant a trespasser in relation to the property sold, more especially where there is no intentional wrong. To give to such act the effect claimed would be carrying the doctrine of trespass *ab initio* to an unreasonable if not to an absurd extent. An

officer who sells property upon an execution cannot be made a trespasser *ab initio* for misapplying a surplus of money in his hands which it is his duty to pay over to the execution debtor. To make the officer a trespasser *ab initio*, the wrongful act must be done to the property itself,—not to the fund realized from a legal sale.

As the pleadings stand the court ought to have directed a verdict for the defendant. Treating all the facts and evidence as in the case upon appropriate pleadings, it was, to say the least, error to direct a verdict for the plaintiff.

Judgment reversed, and new trial granted.